**UNITED STATES DISTRICT COURT**

**DISTRICT OF MINNESOTA**

ADVANCEPCS,

Plaintiff,

v.

CHRISTOPHER MOEN,

Defendant.

Civil No. 01-2099 (JRT/FLN)

**ORDER DENYING PRELIMINARY INJUNCTION**

Martin D. Schneiderman, STEPTOE & JOHNSON LLP, 1330 Connecticut Avenue, NW, Washington, DC 20036; and J. Thomas Vitt and Todd W. Schnell, DORSEY & WHITNEY LLP, 50 South Sixth Street, Suite 1500, Minneapolis, MN 55402 for plaintiff.

Steven E. Ness, HENRETTA, CROSS, NESS & DOLAN, 9800 Bren Road East, Minnetonka, MN 55343, for defendant.

Plaintiff AdvancePCS has sued its former employee, defendant Christopher Moen, for breach of an employment agreement, which includes a covenant not-to-compete. This matter is before the Court on plaintiff's motion for preliminary injunctive relief to enforce the non-compete provision of defendant's employment agreement and to prevent the improper use or disclosure of plaintiff's confidential information.[1]

[1] Although plaintiff's motion was styled a motion for a temporary restraining order, both parties received notice of the motion and were heard by the Court. Therefore, the Court shall construe the motion as one for a preliminary injunction. *See* Fed. R. Civ. P. 65(a).

FILED ____________
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD. ____________
DEPUTY CLERK ____________

## BACKGROUND

Plaintiff is a "prescription benefit manager" (PBM) to third-party health care payors, such as insurance companies and HMOs. Plaintiff is the largest such business in the United States. Plaintiff negotiates rebates from drug manufacturers on behalf of its customers. In exchange for negotiating the rebate, plaintiff earns a percentage of each rebate it secures. Plaintiff claims that the structure of these rebates is complex, and that negotiations over rebates require significant planning. The agreements that plaintiff reaches with drug manufacturers are generally kept confidential from other drug manufacturers, customers, and even some of plaintiff's own employees.

Defendant was hired in June, 1998 to work as a Manufacturer Representative in plaintiff's Bloomington, Minnesota office. In this capacity, defendant was an at-will employee, and he was entitled to severance benefits of one week for every year he was employed by plaintiff. Shortly thereafter, defendant signed a confidentiality agreement in which he promised not to disclose any confidential information or trade secrets acquired in the course of his employment. In August, 2000, defendant was promoted to Manager of Pharmaceutical Contracting. After this promotion, defendant remained an at-will employee and his severance benefits did not change.

On June 29, 2001, defendant executed an employment agreement (the "Agreement") with plaintiff. This agreement provides for a one-year term of employment, and promises defendant increased severance benefits should he be terminated without cause or refuse to relocate. Specifically, the Agreement provides that

defendant would receive one year's salary and health insurance if he were terminated without cause, or chose not to relocate.

The Agreement also includes a "non-competition and non-interference" clause ("the non-compete covenant"), in which defendant agrees not to engage in similar work for other companies for one year after leaving plaintiff. Article 5(b) of the Agreement provides that in exchange for agreeing to the non-compete covenant, defendant would receive a bonus of $250 as "additional consideration."

On October 31, 2001, defendant resigned from plaintiff. On November 2, 2001, defendant informed plaintiff that he had accepted a position with Prime Therapeutics, a competitor of plaintiff. Representatives of plaintiff then met with defendant, and advised him that his new job would violate the non-compete covenant. Plaintiff again warned defendant of his obligations under the Agreement in a letter dated November 6, 2001. On November 9, 2001, one week after defendant's last day of work for AdvancePCS, plaintiff made an allegedly unauthorized automatic deposit of $230.88 into his bank account. Defendant returned the money that same day.

## ANALYSIS

### I. Standard of Review

A preliminary injunction may be granted only if the moving party can demonstrate: (1) that the movant will suffer irreparable harm absent the preliminary injunction; (2) probable of success on the merits; (3) that the balance of harms favors the movant; and (4) that the public interest favors the movant. *Gelco Corp. v. Coniston*

*Partners*, 811 F.2d 414, 418 n.4 (8th Cir. 1987); *Dataphase Sys., Inc. v. C L Sys., Inc.*, 640 F.2d 109, 113 (8th Cir. 1981). Injunctive relief is considered to be a "drastic and extraordinary remedy [which] is not to be routinely granted." *Taxpayers' Choice Volunteer Comm. v. Roseau County Bd. of Comm'rs,* 903 F. Supp. 1301, 1307 (D. Minn. 1995) (quoting *Intel Corp. v. ULSI Sys. Tech., Inc.*, 995 F.2d 1566, 1568 (Fed. Cir. 1993)); *Calvin Klein Cosmetics Corp. v. Lenox Lab., Inc.*, 815 F.2d 500, 503 (8th Cir. 1987) (cautioning that a preliminary injunction is an "extraordinary remedy"). The party requesting the injunctive relief bears the "complete burden" of proving all the factors listed above. *Gelco*, 811 F.2d at 418.

## II. Irreparable Harm

Resolution of this motion turns primarily on the Court's assessment of the absence of irreparable harm. It is true that Minnesota courts have inferred irreparable harm from the breach of reasonable covenants not-to-compete in certain limited circumstances. *Webb Publishing v. Fosshage*, 426 N.W.2d 445, 448 (Minn. Ct. App. 1988).

> Irreparable injury can be inferred from the breach of a restrictive covenant if the former employee came into contact with the employer's customers in a way which obtains a personal hold on the good will of the business. . . . However, the inference may be rebutted by evidence that the former employee has no hold on the good will of the business or its clientele.

*Id.* In *Webb Publishing*, Fosshage, an employee, breached a non-compete covenant with his employer. Fosshage was the primary contact with four customers, who constituted nearly 45 percent of the employer's revenue. *Id.* at 447-49. Fosshage worked closely with these customers, and considered them to be his friends. *Id.* at 449. Upon

Fosshage's departure from the employer, two of the customers canceled their contracts with the employer, and moved their business to Fosshage's new firm. Based on these facts, the Minnesota Court of Appeals determined that Fosshage had a "personal hold" on the customers, and found irreparable harm based on the breached restrictive covenant. *Id.*

In *Medtronic, Inc. v. Advanced Bionics Corp.*, 630 N.W.2d 438 (Minn. Ct. App. 2001), the court also upheld an inference of irreparable harm based on breach of a non-compete covenant. *See id.* at 452-53. In that case, the employee, Stultz, left Medtronic to work for a competitor in violation of a non-compete agreement. The court noted that while Stultz was employed at Medtronic, he "developed his own business contacts and relationships" among customers in the relevant field. *Id.* at 452. The court further noted that the competitor hired Stultz "for his contacts and relationships with others in the market," which he was able to develop through his work at Medtronic. *Id.* Thus, the court concluded that Stultz had "acquired personal influence over customers," with which he could take goodwill from Medtronic to his new employer. *Id.* at 452-53. *See also Thermorama, Inc. v. Buckwold*, 125 N.W.2d 844, 845 (Minn. 1964) (upholding inference of irreparable harm based on breach of restrictive covenant, because employer "may well lose a number of customers for whom it has not had a fair opportunity to compete").

In the present case, the Court finds that plaintiff has presented no evidence that defendant is in a position to lure customers away from AdvancePCS to Prime Therapeutics, defendant's new employer. In fact, plaintiff concedes that defendant had virtually no interaction with its customers, and that defendant's primary role was to implement negotiation strategies that were conceived by others. Nevertheless, plaintiff

claims that defendant's knowledge and anticipated use of these strategies will cause irreparable harm.

Even if plaintiff had presented evidence to warrant such an inference, the Court finds that defendant can successfully rebut such evidence by his showing that he had no personal influence over plaintiff's clients. *See Webb Publishing*, 426 N.W.2d at 448. Defendant's relationship with drug manufacturers does not appear even to approach the "personal hold" that would support an inference of irreparable harm. Defendant negotiated contracts; his job did not involve soliciting new business or retaining current customers for AdvancePCS. Although defendant may have negotiated confidential contracts using plaintiff's proprietary "strategies," the Court cannot discern how defendant's knowledge of these confidential rebate strategies could irreparably harm plaintiff's interests. The plaintiff and its rival, Prime Therapeutics, do compete for the same business. But in the Court's view, it is the size of the companies' customer pools, and thus the economic leverage it brings to negotiations, that primarily determines the size of the rebates, not any secret negotiation strategy. Therefore, the Court finds that plaintiff will not be irreparably harmed if the injunction is not issued.

**III. Balance of Harms**

According to plaintiff, allowing defendant to use his knowledge of plaintiff's strategies to help Prime Therapeutics will harm AdvancePCS far more than enforcement of the covenant will harm defendant. Defendant argues that the non-compete covenant imposes too great a restriction on his ability to work, and that the restriction is greater

than necessary to protect plaintiff's business. *See Webb Publishing*, 426 N.W.2d at 450; *Bennett v. Storz Broadcasting Co.*, 134 N.W.2d 892, 898-99 (Minn. 1965) (holding that restrictions that are broader than necessary to protect the employer's legitimate interest are generally held to be invalid). As discussed above, the Court cannot determine exactly what sort of harm will come to plaintiff if defendant continues in his new job while this case is pending. At the same time, enjoining defendant from working in his chosen field will place a significant burden on him. Therefore, the Court determines that the balance of harms favors the defendant.

## IV. Probable Success on the Merits

Probable success on the merits turns on whether the non-compete covenant is valid and enforceable.[2] Defendant argues that the non-compete covenant is unenforceable because he received no independent consideration for signing it. Specifically, defendant claims that he never received the severance pay or health care, nor did he receive the $250 "bonus" while he worked for plaintiff.[3] Thus, defendant argues that he received no "real advantages" in exchange for signing the non-compete covenant. *See Davies & Davies Agency v. Davies*, 298 N.W.2d 127, 131 (Minn. 1980). Defendant further claims that he was told by his superiors at AdvancePCS that if he left the company without being

---

[2] Although Minnesota courts generally construe restrictive covenants strictly, such covenants will be enforced to the extent that they are reasonable. *Cherne Indus., Inc. v. Grounds & Assoc., Inc.*, 278 N.W.2d 81, 88 (Minn. 1979). A covenant may be "reasonable" if it is (1) supported by adequate consideration, (2) temporally and geographically reasonable, and (3) related to a legitimate interest of the employer that is greater than the interest of the employee. *Webb Publishing v. Fosshage*, 426 N.W.2d 445, 449-50 (Minn. Ct. App. 1988).

[3] Defendant hastens to add that the $250 would be inadequate consideration for the non-compete covenant, even if he had received the money while working for plaintiff.

paid the 12 months of severance pay, the non-compete covenant would be null and void. Plaintiff disputes this claim.

Plaintiff argues that defendant received significant and valuable consideration for agreeing to the non-compete covenant. Specifically, plaintiff asserts that defendant received at least two real economic benefits by signing the Agreement in June, 2001: (1) a guaranteed one-year term of employment, and (2) an enhanced severance package, which included twelve months of full salary and health care coverage. Plaintiff adds that such a severance package is far more generous than those usually offered to employees of defendant's experience. Plaintiff further argues that the $250 bonus was simply "additional consideration," as the text of the Agreement states.

Plaintiff makes a strong case that defendant violated the employment agreement and the non-compete covenant. Nevertheless, the Court finds that several factual issues – such as exactly what defendant was told about the enforceability of the covenant – will likely be clarified through discovery. Therefore, the Court cannot presently find that plaintiff will probably succeed on the merits.

## V. Public Interest

Minnesota courts do not favor non-compete covenants because they are partial restraints on trade. *Midwest Sports Mktg., Inc. v. Hillerich & Bradsby of Canada, Ltd.*, 552 N.W.2d 254, 265 (Minn. App. 1996). Nevertheless, restrictive covenants are enforced to the extent reasonably necessary to protect legitimate business interests. *Webb Publishing*, 426 N.W.2d at 450. Because plaintiff has not demonstrated that its business

interests are at stake, the Court cannot determine that the public interest favors issuing the injunction.

The Court therefore concludes that a preliminary injunction should not be issued.

## ORDER

Based on the foregoing, all the records, files, and proceedings herein, **IT IS HEREBY ORDERED** that plaintiff AdvancePCS's motion for preliminary injunctive relief [Docket No. 2] is **DENIED**.

DATED: December 7, 2001
at Minneapolis, Minnesota.

John R. Tunheim

JOHN R. TUNHEIM
United States District Judge